Good morning, your honors. Good morning. May it please the court, my name is Carson Griffiths, and I represent the defendant, Crandall Williams, in this matter. I'd like to reserve a few minutes. Spell your name, please. First name's Carson, C-A-R-S-O-N. My last name is Griffiths, that's G-R-I-F-F-I-S, as in Sam. And you'd like to reserve two minutes? Yes. Please proceed. Crandall Williams was deprived of a fair trial when the trial court misapprehended evidence forming the crux of his defense. Williams' defense in this case was that doubt existed as to whether his DNA matched the DNA recovered from gloves left at the scene of the crime. However, the trial court believed that the defense expert, Dr. Carl Reich, conceded the presence of Williams' DNA, and only contested whether Williams was a major or minor contributor of DNA to the gloves. In People v. Bowie and People v. Mitchell, the courts held that a trial court's failure to recall evidence forming the crux of a defense denies the defendant his due process right to a fair trial. And in this case, Williams' defense centered upon Dr. Reich's testimony, which the trial court misunderstood. There were at least three individuals' DNA present in the glove recovered from the scene, and the three laboratories analyzing the major profile found in that glove differed in their opinions as to which alleles were present at the loci D13 and TPOX. As Reich testified, a difference at a single locus would mean that between Williams' profile and the glove profile would mean that Williams would be affirmatively excluded as a contributor of DNA to that glove. And Dr. Reich also testified that a coincidental match would be possible at up to 11 loci. Thus, using the difference of opinion among the different laboratories, as well as the presence of multiple contributors, and the possibility of a coincidental match, Williams sought to create reasonable doubt as to whether he left his DNA in the glove at all. The trial court, however, mistakenly took Dr. Reich's testimony as a concession that Williams' DNA was present in the glove, stating that Dr. Reich did have to indicate that certainly it was still the defendant who, through every standard taken, was one of the individuals whose DNA was on the gloves, though he disputes whether or not he was a major contributor. At most... So you're saying that Dr. Reich was saying that the defendant would have been excluded, is that correct? If there was a difference between the major profile and Mr. Williams' DNA at a single locus, yes. And was there? That couldn't be ascertained in this case. Well... That could not be determined in this case. However, Dr. Reich did testify that doubt existed. As to the conclusion, a full 13-loci match could not be determined in this case, according to Dr. Reich. And all that could be determined was a partial 11-loci match. And without a full 13 match, then there could not be a definitive determination that the defendant's DNA was on that glove. Yes. Is that correct? Yes. Without the full 13? Yes. While Dr. Reich did concede that Williams could not be excluded from the DNA profile... So what's the significance of that? That is what the judge hung his head on, was that Reich said that Williams, the defendant, could not be excluded. And then the judge used that, along with Wortham's testimony, to say that, therefore, those two taken together, then there was sufficient evidence in order to convict your client. The trial court found that Dr. Reich had to indicate that Williams' DNA was on the gloves, which is not what Dr. Reich testified to. All he testified to was that Williams could not be excluded as a contributor, but neither could he be included at all 13-loci. But he didn't say that. He said he could not be excluded. He did not say that he also could not be included. That's correct. He did not explicitly state that. However, the difference between a match at 13-loci and the inability to exclude someone, as this court recognized in People v. Wright, is large. There's a large difference between saying someone cannot be excluded and someone affirmatively matching at all 13-loci. So what is the difference there? Because that's what the court hung his head on. The court said, if he can't be excluded, then certainly that means he's included. And so you're saying that the court misapprehended or misunderstood? Yes. And so explain to me again clearly, what's the difference between cannot be excluded and certainly is included? A match would mean that at all 13-loci, the major profile had alleles that precisely matched Mr. Williams' profile. However, in this case, there was some differing opinion at the loci D13 and TPOCS. Thus, two out of the 13-loci did not precisely match. According to Dr. Wright's testimony, the state had been excluded. And so that meant how many other people would have been included in the? There was not evidence as to. What? There was not evidence presented as to how many other individuals could have been matched at 11-loci. At 11? Yes. However, Dr. Wright did testify that the coincidental match was possible at up to 11. So what? That a coincidental match was possible at up to 11-loci. And thus, in this case, the trial court's finding that the defendant's DNA, not just that the defendant's DNA was on the gloves, but that Dr. Wright conceded that. And thus, there were two experts essentially in the trial court's mind conceding the presence of Williams' DNA was incorrect. Let me ask you this question. It takes 13-loci to have a match, isn't it? Yes. So when an expert testifies to anything less than that, why does not the public defender object to that testimony? I can't speak to why defense counsel did not object. Every time I read a transcript, I see this. I know all about DNA. I think I probably wrote that right case that you're talking about. Yes. But the problem that I see in the trials of these matters, and you ought to bring it back to your office, is there should be an objection, maybe even a motion to bar an expert from testifying to anything less than 13 because anything less than 13 is not a match. Yes. And they keep saying, you know, it's a match at one, it's a match at two. It gets people confused who don't know about DNA. Correct. And I think that's what occurred in this case. And while I certainly agree that defense counsel should have objected, I don't think that the failure to object would preclude this court from reaching this issue. That's not the issue. I'm just giving you some advice. I shouldn't be giving advice, but I'm giving it to you anyway. Thank you, Justice Corton. For the betterment of justice. Moreover, the trial court's error in this case, this court should not find that it was harmless beyond a reasonable doubt, as the centerpiece of Williams' defense hinged on Wright's testimony. And as this court noted in Wright, that DNA evidence is a type of evidence that juries and courts alike find highly persuasive. Thus, the impact of the DNA evidence on the trial court's finding of guilt was large. Furthermore, the state addresses or primarily relies upon forfeiture in its brief, arguing that Williams has forfeited review of this issue. But as noted by the Illinois Supreme Court in Mitchell, a defendant need not interrupt a trial court to correct a trial court's misapprehension after defense counsel has just argued the same to the court. And here, defense counsel did argue in closing that a coincidental match was possible in this case and that doubt existed as to whether- They did it in closing, but not during the trial when the court made the statement. No. So defense counsel argued in closing that, and then immediately following that the trial court issued its findings, which included the misapprehension of the evidence. And thus, pursuant to Mitchell, defense counsel was not required to object to it. However, even if this court does find that the issue was forfeited, you should address it under either prong of the plain error doctrine. With respect to the first prong, the evidence here was closely balanced. The only physical evidence in the case was the DNA, which was disputed. And the only remaining testimony was that of the jailhouse informant, James Wortham, who the trial court said it had to view with extreme caution. And with respect to the second prong- Well, Wortham testified that he hadn't been promised anything. He just felt sorry for the old man. Wasn't that his testimony? Yes, that was his testimony. However, even the trial court recognized the caution with which it had to view Mr. Wortham's testimony given his history of convictions dating back over 20 years and his prior cooperation with federal authorities and drug stings and his acknowledgment that the state's attorney's office- he believed the state's attorney's office could do him favors, specifically with his desire to be returned to a medium security facility after having been transferred to a maximum. So, for the purposes of the plain error- the first prong of plain error, in this case we would argue that the evidence was closely balanced. And moreover, with respect to the second prong, here the trial court's failure to recall the defense expert's testimony deprived- No, you said that this was not a failure to recall. Correct. Well, it was a misapprehension of the evidence. So whether the trial court failed to recall what Dr. Reich had testified to or whether the trial court misunderstood what Dr. Reich testified to? The trial court said what Dr. Reich testified to. Dr. Reich, as I understand you saying, just did not fully testify to the inclusion versus the exclusion. He testified to that it could be excluded. He could not be excluded. Correct. But he didn't say that he could also possibly not be included as well. He partially testified. He testified that at most, because of the partial match in this case, all that could be ascertained was that Williams could not be excluded as a contributor. And you're saying that he left out what part? I'm not saying- I don't believe that Dr. Reich left out any testimony. I believe that that testimony was just there to create reasonable doubt as to whether Williams contributed to the glove. Yet the trial court construed that as a concession that Williams' DNA affirmatively matched at all 13 loci. So the trial court's recall was accurate then? He recalled what Reich had said? No, he did not recall what Reich had said because Reich never conceded an affirmative match. So in order for an affirmative match to have occurred, Reich would have had to concede that, yes, the major profile here matched exactly Williams' profile at all. The trial court here was mistaken because they thought there was a match. Isn't that what it's all about? Yes, that's exactly what it's about. All right. Well, that's what you should have told us. I mean, if that's the case. But that's not what the trial court said. The trial court said that and it repeated what Reich had said and then drew its own conclusion. Well, it said that Reich, on cross-examination, had to admit that Williams was one of the individuals whose DNA was on the gloves. That's implicitly saying Dr. Reich conceded that there was a match at all 13 loci. But on cross, all Dr. Reich testified to was that there were alleles mixed in with other ones at D13 and at TPOX, which resembled those of Mr. Williams' profile. However, because there were other alleles mixed in with those that matched Mr. Williams, a full 13 loci match was not possible. And all that could be ascertained was an 11 loci match, which – Yeah, you see, you keep saying 11 loci match. There just was 11 loci. To have a match, you need the 13. Correct. I don't know why anybody can't understand that. That Williams' DNA resembled the major profile of Williams. People should take a course on DNA and find out what DNA is all about. A match at DNA is at 13, period. Anybody else who says there's a match at 1, 2, or 11, or 12, it's not a match. Yes, exactly. And because the trial court misunderstood that fact, which was the center of Williams' defense, he was deprived of his due process right to a fair trial. And unless this court has further questions, we would ask that you grant Mr. Williams a new trial. Thank you. Good morning, Your Honors, and may it please the Court. My name is Peter Fisher. I'm an Assistant State's Attorney on behalf of the people. Lost within the first argument is the fact that there were two experts that talked at this trial. One was Dr. Staub. That Dr. Staub testified clearly, unequivocally, and 100% that there are 13 loci in this case, and it was, in fact, a match. There is no question that that's what Dr. Staub testified to. He is an expert. The judge believed him. The judge said he believed him. The judge would have been entitled to stop right there and just say, The judge did make a credibility ruling between Reich and Staub. He essentially did, Your Honor. When? Where? Well, look at what the judge said. He went through the evidence, and he started by saying that he explained what Dr. Staub found, and Dr. Staub found a match. There's no question. He found 13 loci. He said that the defense then presented Dr. Reich to rebut that, and then he went into specifically what happened on cross-examination, and I've got a lengthy diatribe on cross-examination here, but what the judge said is, However, regardless of all, Dr. Reich did, through laborious cross-examination, have to indicate that certainly it was still the defendant, through every standard taken, was one of the individuals whose DNA was on those bloods. Now, let's go back to what happened at cross-examination. The state's attorney took Dr. Reich through 13 loci, and at every point, Dr. Reich said, Yes, the defendant's DNA is there, and that is in the sample. So you're saying that Reich testified that at every loci of all 13? On cross-examination. Of all 13 that the defendant's DNA was there. So you're saying that Reich and Stout testified to the same thing? Reich did not testify that way on direct examination, but when he was taken allele by allele through that on cross-examination, and you add it up, he ended up agreeing, and then he fudged it with this, I can't exclude him. Now, when you get to 13, a statement of I can't exclude is a statement of inclusion. And basically, when we start dealing with it, you have to remember, for years, six was okay. Six was a match for many years. If he's saying I can't exclude, why isn't that in? Well, it is. I mean, why isn't that favorable to your position? It is. It absolutely is. Then you said he fudged it up. Why? Because he wouldn't say it's a match. But the term match, and then we get into this discussion of whether it's possible there could be a coincidental match. Sure. Even at 13, there's a one in 100. Let me stop you for a minute. I know all about DNA. As do I, Your Honor. And when you say that years ago six was a match, that is not the same loci as the 13, because what they did over the years, they found that six covered a vast area, so they made it into 13. It still was the same thing. So the six today is not the six of yesterday. No, it's more refined. And as Your Honor is probably aware, they're going to go to 16 soon. It all depends on how you refine it. Well, it also depends on the numbers. Remember, we've got a one in 196 quadrillion chance that there's a coincidental match here. But is there a possibility? Sure. But the possibility is so infinitesimal that they're willing to call it a match. But we don't deal in possibilities. A defendant has to be found guilty beyond a reasonable doubt. We're not dealing with possibilities. Well, unfortunately, Your Honor, you are. I don't think so. Well, you're not going to find somebody, a DNA expert, who says this is the defendant. As long as I'm alive and sitting here, there's going to be no defendant that's going to be found guilty unless they're found guilty beyond a reasonable doubt, and I will not consider possibilities. Well, one another. No judge should consider possibilities. Well, that's what you're doing when you do DNA. No, that's not true. I disagree with that 100%. Well, when an expert says it's a one in 196 quadrillion chance that someone else's DNA, someone else left this DNA, that is still dealing with probabilities and possibilities, Your Honor. Probabilities are fine, not possibilities. Probability is the word, not possibility. I'm using the word possibility because the defense used the word possibility of a coincidental mass, Your Honor. But needless to say, as Your Honor has found, 13 is enough and there was 13 here, so we don't even have that question. Well, you know, in reading the cross-examination, you know, I never saw Dr. Wright testify that there was 13 here. You know, if you could find that for me. He didn't say 13. If you take one at a time and show it to him, that's another story. And he did, Your Honor. He was on page 523 going through page 533. The state's attorney took Dr. Wright through each of the alleles. Let's take an example. Well, I know. He took him through each. Yes. Okay. And he said, looking at the defendant's DNA, his alleles at D3 are 17 and 18, and the body reported D3 has 17 and 18, and they're not in parentheses, meaning they're not minor component alleles. He did that for each one. He did that 13 times, Your Honor. The point is, and as we put in our brief, what Dr. Wright was made to admit was, and I quote from page 530, looking through the charts, each of the defendant's alleles are present in the body chart, so the defendant's alleles are on each one of the 13 loci on the DNA profile from the gloves, record 530. Dr. Wright admitted this means defendant cannot be excluded from the DNA profile. Yeah, that's all he said. He cannot be excluded. That's funny. That's not a man. I'm sorry. Respectfully, when he's just said he's present on 13, when all you're willing to say is he can't be excluded, and when you've already yourself admitted that 13 is a match, that's fudging, Your Honor, and that's part of the reason that the judge said, I accept what Dr. Staub said, and basically he was saying, look, Dr. Wright said one thing on direct and on cross. What he said was different. Yeah, but the trial judge here I thought said that Wright, you know, agreed. Oh, he essentially did agree. Excuse me. Where did he say I accept what Dr. Staub said? He said that he thought Wright's testimony could not exclude. No, no. Page 595, Your Honor. Could not exclude the defendant from being considered or as having contributed to the blood in the glove. That's true, Your Honor, but before he said that on page 595, the judge noted that Dr. Staub found the defendant was unquestionably the major contributor of the DNA found inside the glove. Give me the page. Page 595, and then at 595 through 597. He's talking about Staub. He's talking about Staub. Dr. Staub did testify he was the major contributor by the evidence I have. Furthermore, in this case, it certainly does support Dr. Staub's finding. He believed Dr. Staub. If he didn't believe Dr. Staub, we couldn't be here, Your Honor. I would concede that. Dr. Staub was important to our case. Dr. Staub found the 13 low side. What he was saying, and, you know, this is unfortunate because judges are damned if they do and damned if they don't. This judge, who's familiar with DNA, has done these cases before. He would have been entitled, this is a bench trial, to say, I find him guilty and not say anything else. He would have been entitled to say, I find him guilty because I believe Dr. Staub and not say anything else. But he didn't do that. That's what we ask judges to do, to explain their reasoning. And then he gets damned for doing it because his words get parsed out of all context. And, again, he said, this is, again, from 595 to 597, the defense refuted Dr. Staub through Dr. Wright. However, regardless of all, Dr. Wright did through laborious cross-examination. So that is that laborious cross-examination that you're speaking of in terms of Dr. Wright admitting that the DNA was in all of the loci. Yes. And, again, I encourage you to go back and look at what the state's attorney did there and get Dr. Wright to admit it. Without question, we will do that. But isn't it true that Dr. Staub agreed with Bodie's conclusion that there was at least three contributors to the unknown sample from the globe? Yeah. No question. Both people agree with that, that that's not uncommon in these cases, that there are major and minor contributors? Major and minor only means how much nucleic acid is in a sample. The defender said he had gotten the gloves from his father. I think that was the testimony. So that could be someone else. And the interesting thing is you ask why the public defender didn't object. First of all, there was a 13-loci match, so there was nothing to object to. You ask why they didn't object, and there was. What I'm saying is this. Whenever an expert goes less than 13, there should be an objection when they use the word match. Okay, but that didn't happen here. Because it just confuses the trier of the fact who may not be certified in DNA. That may be true. Maybe they should make all judges certified in DNA. Then there would not be this problem. So don't you think that Dr. Reich's testimony could lead to reasonable doubt in this case? If you believe Dr. Reich. And so there's a possibility that Reich could have been. It actually wouldn't lead to. If you believe Dr. Reich, he still doesn't exclude the defendant. So it's another inclusion. Well, he doesn't exclude him. There could be 100,000 or 100 million people like him. I think, Your Honor, if we were to do an 11 loci analysis, there would not be 100 million. Okay, but how many do you think there would be on 11? On 11, I'm imagining you're talking one in several billion. Okay. Maybe several trillion. Okay. So maybe there's another person on five Earths. Well, I don't think there will be that type of thing. You know, each one of them, a finding at six loci or eight loci, that changes the calculation of how common this match, this congruence between the defendant's DNA and the DNA in the sample is. So you could come up with numbers at six loci and determine, well, it's one in 50. But we don't do that anymore. We're at 13. We had 13 here. The other thing to point out, it's obvious that by the time closing arguments came around, the public defender was pretty aware that he was on shaky ground. Because he even conceded, you know, well, okay, Crandall Williams' DNA may possibly be in there. So he said the only thing you could possibly take from this evidence, and it's still my proof, my analysis, is that at some point in his life, Crandall touched the glove. Well, touching that glove that happens to be left at that murder scene in conjunction with the third-party confession, that is the evidence. And this was the defense counsel? Excuse me? Defense counsel speaking? That's defense counsel speaking. Page? Well, page 548 through 569. He makes his closing arguments. And if you look at those closing arguments, he was backing away from the idea. Then he got into basically, okay, well, maybe he touched it. At some point in his life, Crandall may have touched the glove. Right. But that doesn't mean he's the murderer. Well, yeah, it does, in conjunction with this case, the coincidental fact of confessing third-party to somebody, plus this DNA being found in that glove, it makes it pretty ridiculous to say. I never actually got to the point of discussing the forfeiture issue, Your Honors. This is, in fact, forfeited. The defense counsel has an obligation to object when the judge is making what he believes to be a misstatement. Clearly, the defense counsel did not believe it to be a misstatement. He didn't object when the judge said it. So how do you get past plain error? Well, first of all, the evidence is not closely balanced. Not? If the judge believes Dr. Staub. He can rely on Wertham? He can rely on Wertham, and he can rely on Dr. Staub, and it's not closely balanced. The second problem is completely foreclosed. The Illinois Supreme Court, in both Glasper and Thompson, has told us what second-pronged plain error is, and it's limited to a very short list. That list is contained in both Glasper and Thompson. This is not one of those cases. The defense argument that we don't have to object because it's an error of the trial court was rejected also in Thompson. And what Thompson said there is, essentially, if there's nothing in the record to indicate that the judge would have not listened to you or that the judge was going to bite your head off if you made an objection, and there's nothing here to say that this judge wasn't going to listen to an objection. This judge was fair throughout. There's no indication that he was keeping the defendant from arguing anything. So in that basis, the defense is required to raise an objection, and they can't say, and again, look at Thompson, they can't say, look, it was a judge's error and were foreclosed. So for the reasons I've stated, Your Honor, and once again pointing out that there were, in fact, 13 here, I would respectfully request that you affirm the defendant's conviction and sentence. Thank you. Thank you, counsel. Rebuttal. First, with respect to the State's contention that there was 13 loci here, when examining Dr. Wright's testimony, that is not what Dr. Wright testified to. He testified that there was only evidence that Williams could not be excluded. Well, what about your opponent's argument that the State's attorney took him loci by loci and added up to 13 of them? Well, on cross-examination, the State ignored the fact that at D13, there was an additional loci, loci 12, I'm sorry, allele, allele number 12, which did not match Mr. Williams, which the Illinois State Police included in its analysis of what the major profile was. So which one? D13, and also at TPOCS, the Bode Technology Group determined that the 11 allele was the minor contributor to the DNA. Mr. Williams at TPOCS was a 9-11. Thus, if Bode correctly analyzed the profile, that locus would not match Mr. Williams' DNA at that locus. So the State's cross-examination in this case did not elicit a concession of a 13 loci match. Rather, all it did was get Dr. Wright to say, I can't exclude Mr. Williams from the profile, but this court has recognized him right, and the appellate court in the second district, in Watson, recognized that a 13 loci match, as Justice Gordon pointed out earlier, is all that can be considered a match. Anything less than 13 is not a match. And that's what Dr. Wright testified to here, that at most there was DNA resembling Mr. Williams at 11. Moreover, the fact that the trial court credited Dr. Staub has no relevance to this appeal, as the trial court's believing Dr. Staub was premised upon the fact that it misunderstood what Dr. Wright said. So in essence, the trial court believed there were two experts agreeing on the fact that Mr. Williams' DNA was there. Yeah, but how does that exclude Staub? If Staub categorically stated that there was a match at all 13, you know, simply because Wright said something different, I don't see how that eliminates Staub's testimony or the judge's reliance upon Dr. Staub's testimony. It doesn't eliminate it, but it's important to remember that in this case, Mr. Williams is not challenging the sufficiency of the evidence. Rather, he's arguing a due process violation, arguing that he should have a trier of fact that correctly understands the defense evidence presented. Thus, the fact that there was a state expert here does not affect the fact that the trial court misunderstood the crux of the defense evidence, which created the due process violation in this case. Finally, with respect to the fact that the second prong of plain error, Glasper and Thomas do not deal with the second prong of plain error. They deal with structural error, which is a fundamentally different concept than the second prong. And this court has applied the second prong of plain error, even in those cases not on the state's supposed exhaustive list of structural errors, such as in Wright, you applied the second prong of plain error to a denial of a pretrial motion for DNA testing. In Sutton, you applied it to a confrontation clause violation. So the state is incorrect to argue that Thomson and Glasper foreclosed the application of the second prong of plain error to errors outside those that the U.S. Supreme Court has deemed to be structural. And with respect to defense counsel's closing argument, the portion of the record that the state cites was defense counsel's alternative argument. Defense counsel said that the state presented evidence that Crandall could not be excluded as the major contributor to the DNA, Your Honor. However, there was a major profile at some of the locations which makes that potential profile or makes it a partial profile identifier as to who was, in fact, the major contributor. That was the primary argument, that this partial profile was insufficient to create a DNA match. Defense counsel only proceeded to say that even if you find a match in this case, Your Honor, he's still not guilty beyond a reasonable doubt. So that was just an alternative argument. Because what? I mean, I thought your opponent said that defense counsel indicated that there may be some possibility that at some time, what, in his life that he may have touched the glove? I think defense counsel said that. Defense counsel was arguing that even if the trial court found that there was a DNA match in this case, that neither expert would testify as to when the individuals, the three different individuals whose DNA was in that glove, left that DNA. So defense counsel was arguing there's no definitive evidence of a match here. Moreover, even if you do find a match, you can't link Crandall Williams to this offense. That was just an alternative argument presented by the defense, not its primary argument. And I would direct your attention to pages 549 and 550 of defense counsel's closing. I believe your time is up, counsel. You need to conclude. We would just ask that Your Honors grant Mr. Williams a new trial. Thank you very much. Thank you. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.